FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 04, 2023

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER C., [1] <br><br>                  Plaintiff, <br><br>   v. <br><br> KILOLO KIJAKAZI, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br><br>               Defendant. | NO:  4:22-CV-05001-LRS <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 14.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Chad Hatfield.  Defendant is

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  See LCivR 5.2(c).

ORDER - 1

represented by Special Assistant United States Attorney Katherine B. Watson.  The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 13, is

denied and Defendant's Motion, ECF No. 14, is granted.

## JURISDICTION

Plaintiff Jennifer C. (Plaintiff), filed for supplemental security income (SSI)

on September 13, 2018, and alleged an onset date of January 1, 2018.  Tr. 220-34.

Benefits were denied initially, Tr. 131-39, and upon reconsideration, Tr. 143-49.

Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October

8, 2019.  Tr. 37-77.  On October 30, 2019, the ALJ issued an unfavorable decision,

Tr. 13-32, and on January 7, 2020, the Appeals Council denied review.  Tr. 1-6.

Plaintiff appealed to the United States District Court for the Eastern District of

Washington, and on February 23, 2021, the Honorable Edward F. Shea issued an

order remanding the matter for further proceedings.

On October 14, 2021, Plaintiff appeared at a second hearing, Tr. 2078-2103,

and on October 27, 2021, the ALJ issued another unfavorable decision.  Tr. 2053-77.

The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

therefore only summarized here.

Plaintiff was 32 years old at the time the application was filed. Tr. 220. She graduated from high school. Tr. 68. She has work experience as a caregiver, fast food worker, cashier, and supervising adolescents in a group home, Tr. 50, 69.

At the first hearing, Plaintiff testified she gets urinary tract infections (UTIs) four to six times a year. Tr. 52. Sometimes UTIs lead to kidney infections. Tr. 52. She has had problems with migraines about twice a month. Tr. 52-53. She has to lie in a dark room for a couple of days. Tr. 53. She has gastroparesis flares about four times a month with symptoms of nausea, vomiting, and stomach pain. Tr. 53. The flares last several days. Tr. 55. She has pain from endometriosis. Tr. 67. Plaintiff testified that when she gets depressed and feeling suicidal, she drinks alcohol to numb her feelings. Tr. 63. Sometimes she binge drinks for up to three days. Tr. 63.

At the second hearing, Plaintiff testified that she was having migraines at least once a week requiring her to lie down in the dark for at least eight hours. Tr. 2085. Sometimes a migraine will last two or three days which requires her to go to an emergency room for treatment. Tr. 2086. She has chronic pancreatitis which drains her energy and she cannot do much of anything. Tr. 2086. She cannot work and she cannot do much around the house. Tr. 2087. Some days are worse than others. Tr. 2087. She gets flares several times a month. Tr. 2087. The last time she had a portion of a shot of alcohol she got very sick due to pancreatitis. Tr. 2089. She has been getting UTIs several times a month and most of the time she would have to be

hospitalized due to drug allergies.  Tr. 2092.  She has depression and fatigue.  Tr 2093-94.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it

is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

However, a finding of "disabled" does not automatically qualify a claimant for disability benefits.  *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.)  When there is medical evidence of drug or alcohol addiction, the ALJ must

determine whether the drug or alcohol addiction is a material factor contributing to the disability.  20 C.F.R. § 416.935(a).  In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling.  20 C.F.R. § 416.935(b)(2).  If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability.  *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to the disability determination.  *Id.*

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2018, the application date.  Tr. 2058.  At step two, the ALJ found that Plaintiff has the following severe impairments:  chronic urinary tract infections, endometriosis, episodic migraines, pancreatitis, depressive disorder with anxiety, alcohol abuse disorder, and alcohol-induced mood disorder.  Tr. 2059.  At step three, the ALJ found that, including Plaintiff's substance use, Plaintiff has an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 2059.

Next, the ALJ found that if Plaintiff stopped the substance use, Plaintiff would still have a severe impairment or combination of impairments.  Tr. 2061.  At step three, the ALJ found that if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 2061.

The ALJ then found that if Plaintiff stopped the substance use, Plaintiff has the residual functional capacity to perform medium work from the alleged onset date through December 31, 2019, with the following additional limitations:

> she could understand, remember, and carry out simple, routine tasks; she could maintain concentration, persistence, and pace for two-hour intervals between regularly scheduled breaks; she could tolerate occasional, routine changes; she could make simple, routine judgments; and she should not be required to work at a fast or production-rate of pace.  From January 1, 2020 onward, the claimant has the same non-exertional limitations but has the residual functional capacity to perform light work as defined in 20 CFR 416.967.

Tr. 2064.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 2068.   At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that if Plaintiff stopped the substance use,  there have been jobs that exist in significant numbers in the national economy that Plaintiff could have performed for the period from January 1, 2018 to December 31, 2019, such as industrial cleaner, store laborer, and hand packager.  Tr. 2069.  Similarly, for the period from January 1, 2020 onward, the ALJ found that if

Plaintiff stopped the substance use, there are jobs that Plaintiff can perform such as warehouse checker, garment sorter, and housekeeping cleaner.  Tr. 2069.

Thus, the ALJ found that substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use.  Tr. 2070.  Because the substance use disorder is a contributing factor material to the determination of disability, the ALJ found that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.  Tr. 2070.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for review:

1.    Whether the ALJ properly considered migraines at step three;

2.    Whether the ALJ properly evaluated Plaintiff's symptom testimony;

3.    Whether the ALJ properly considered Plaintiff's functional limitations without the effects of alcohol use; and

4.    Whether the ALJ made a legally sufficient step five finding.

ECF No. 13 at 8.

ORDER - 10

# DISCUSSION

## A.    Listing 11.02 - Migraines

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the Listings.  *See* 20 C.F.R. § 416.920(d).  The Listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy*, 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

An impairment "meets" a listing if it meets all of the specified medical criteria.  *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1098.  An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1099.

An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most

similar listed impairment are present. *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. §

416.926(b). "Medical equivalence must be based on medical findings," and "[a]

generalized assertion of functional problems is not enough to establish disability at

step three." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). An unlisted

impairment or combination of impairments is equivalent to a listed impairment if

medical findings equal in severity to all of the criteria for the one most similar listed

impairment are present. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. § 416.926(b). The

claimant bears the burden of establishing an impairment (or combination of

impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*,

400 F.3d 676, 683 (9th Cir. 2005).

There is no medical listing for migraines or headaches. However, Listing

11.02 is the appropriate listing for an equivalence analysis for migraines. Social

Security Ruling (SSR) 19-4p, 2019 WL 4169635 (August 26, 2019). Plaintiff

alleges that the ALJ erred with respect to evaluating Listing 11.02B. ECF No. 13 at

17. Listing 11.02B requires documentation of a detailed description of a typical

seizure (or equivalent for migraines), occurring at least once a week for at least three

consecutive months despite adherence to prescribed treatment. 20 C.F.R. Pt. 404,

Subpt. P, App. 1 § 11.02B.

Social Security Ruling 19-4p explains that to evaluate whether a primary

headache disorder is equal in severity and duration to the criteria in 11.02B, the

following is considered: a detailed description from an acceptable medical source of

a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

The ALJ considered Plaintiff's headache disorder at step three. Tr. 2061-62. First, the ALJ noted that no acceptable medical source opined that Plaintiff's headaches medically equaled listing 11.02. Tr. 2061. Plaintiff argues the ALJ erred by "asserting that the DDS physicians found that the claimant's headaches did not equal Listing 11.02B where they made no such analysis." ECF No. 13 at 17. However, Norman Staley, M.D., and J.D. Fitterer, M.D., who reviewed the record, both considered listing 11.02 and neither found that Plaintiff's headache disorder equaled a listing. Tr. 99, 117, 2061.

Next, the ALJ considered the evaluation of a headache disorder under SSR 19-4p. Tr. 2061-62. Plaintiff argues the ALJ misstated the law regarding Listing 11.02B, asserting it "only" requires migraine headaches occurring once a week for three consecutive months. ECF No. 13 at 16-17. However, Plaintiff overlooked

details of Listing 11.02B, which also requires "documentation of a detailed description of a typical seizure" and "adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02B.  Plaintiff also overlooks SSR 19-4p which was referenced by the ALJ and explains how Listing 11.02B should be considered for headache disorders.  Tr. 2061-62.

Then, the ALJ discussed evidence of Plaintiff's headache impairment in the record.  The ALJ noted that the record indicates that Plaintiff reported the frequency and severity of her headaches had increased in early 2018.  Tr. 2062 (citing Tr. 494). In April 2018, she reported having headaches more than 50 percent of the days and severe migraines a few times per month.  Tr. 574.  Ultimately, she received Botox injections in September 2018 and thereafter reported minimal headaches with no severe migraines.  Tr. 1473.  Her doctor recommended additional injections in 12 weeks, but the record does not indicate she returned for another injection or that she sought treatment for migraines thereafter on more than an occasional basis.  Tr. 2062 (citing Tr. 1475).  The ALJ found the record indicates that Plaintiff occasionally reported headaches when treated for other issues, but otherwise typically denied having headaches.  Tr. 2062 (citing Tr. 434, 464, 469, 485, 522, 1449, 1464, 1479, 1484, 1604, 1826, 1830, 1842, 1877, 1883, 1950, 1955, 1960, 1974, 2023).

The ALJ observed that Plaintiff reported severe migraines only from January 2018 to September 2018, which is less than the 12-month period required to establish a severe impairment and a determination of disability.  Tr. 2062.  The

duration requirement provides that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. Similarly, "[a]t the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart *and meets the duration requirement*, we will find that you are disabled." 20 C.F.R. § 404.1520(a)(4)(iii) (emphasis added). Although the ALJ viewed the evidence in the light most favorable to Plaintiff at step two and found episodic migraines to be a severe impairment, the ALJ found that Plaintiff's medical record does not support a finding that her headaches medically equal a Listing for a period of 12 months or more. Tr. 2062. Plaintiff argues the ALJ "misstates the law and regulations," but does not establish any error. ECF No. 13 at 17.

Finally, Plaintiff argues the ALJ did not comply with the previous order of this Court regarding consideration of migraines at step two. ECF No. 13 at 16. The previous District Court decision found the previous step three consideration of migraines was inadequate because the ALJ said only that Listing 11.02 was considered but did not discuss Plaintiff's complaints or the objective medical evidence. Tr. 2143-44. Here, the ALJ discussed Plaintiff's complaints, the medical record, and explained why Listing 11.02 was not equaled. The ALJ complied with the order of the District Court and the step three finding is supported by substantial evidence.

**B.    Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834); *see also Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison*, 759 F.3d at

1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the objective medical evidence does not fully support the level of limitation alleged. Tr. 2065-66. While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Despite Plaintiff's assertion that the ALJ "failed to evaluate the entire longitudinal record – and makes little mention of the claimant's frequent hospital visits," ECF No. 13 at 19, the ALJ discussed the medical record in detail. Tr. 2065-67. In fact, the ALJ discussed in detail "numerous visits to area hospitals" around October 2019 for urinary tract infections, nausea and vomiting, abdominal pain, and pancreatitis (Tr. 2065); treatment records for urinary tract infections and pancreatitis symptoms in 2020 (Tr. 2066); and records from 2021 reflecting "regular visits to hospitals with complaints of pancreatic symptoms" (Tr. 2067). The ALJ ultimately found that

"[a]fter considering the multiple hospital visits in 2020 and 2021 for the claimant's pain symptoms, the undersigned concludes that her exertional capacity would be reduced from medium to light beginning in January 2020" (Tr. 2067). Plaintiff does not identify any error in the ALJ's discussion of the objective record, and the Court concludes the finding is supported by substantial evidence.

Second, the ALJ found the medical opinions are inconsistent with the level of limitation alleged. Tr. 2065-66. A medical opinion that the claimant can perform a limited range of work may support the ALJ's determination that Plaintiff's claim of disabling limitations is not reliable. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). The ALJ cited the February 2018 opinion of Marja Adair, ARNP, who opined that Plaintiff was capable of medium exertion, but noted that later records indicated a reduction in exertional functioning in 2020. Tr. 402-04, 2066. The ALJ cited the 2019 opinions of reviewing physicians Dr. Staley and Dr. Fitterer, who assessed limitations consistent with medium work. Tr. 101-02, 118-19, 2066. The ALJ also noted the statement of David Davis-Boozer, M.D., who completed paperwork in November 2020 "releasing her to work full time without restrictions." Tr. 2067, 3306. With regard to mental limitations, Jay Toews, Ed.D., the medical expert at the first hearing, testified that Plaintiff had limitations consistent with the ability to work if she stopped using alcohol. Tr. 49, 2067-68; *see* Tr. 2060. Reviewing psychologists Shawn Horn, Psy.D., and Michael Regets, Ph.D., found Plaintiff has similar limitations, Tr. 103-04, 120-21, but the ALJ found

Dr. Toews' opinion more persuasive.  Tr. 2068.  The ALJ's consideration of the medical opinion evidence in evaluating Plaintiff's symptom claims is supported by substantial evidence.

Third, the ALJ found Plaintiff exhibited drug-seeking behavior.  Tr. 2066. Drug-seeking behavior can constitute a clear and convincing reason to discount a claimant's pain testimony.  *See Edlund*, 253 F.3d at 1157 (holding that evidence of drug-seeking behavior undermines a claimant's credibility).  Although Plaintiff argues the ALJ's findings are "vague and unsupported," ECF No. 13 at 19, the ALJ detailed findings suggestive of drug-seeking behavior.  Tr. 2066.  In May 2019, it was noted that Plaintiff had four different providers prescribing controlled substances since June 2018, and she had 16 emergency room visits in the past year, yet her drug screen in January 2019 was negative.  Tr. 2066 (citing Tr. 1828, 1832-33, 4070).  In July 2019, it was noted that Plaintiff was "not entirely forthcoming with her history, with her pain medication use"; hospital records note a "flag of concern" that Plaintiff requested Dilaudid specifically for pain; and in August 2019 concerns about drug-seeking behavior were noted along with the observation that Plaintiff had seven ER visits in the previous month for similar complaints despite normal findings on workup.  Tr. 1972, 1979-80, 2016, 2066.  In October 2019, Plaintiff reported to the ER she had several episodes of bilious vomiting, but blood work-up was essentially normal, apart from complaining of severe pain she appeared comfortable, and nurses did not find her vomiting anything though she kept asking

for Phenergan and IV Benadryl.  Tr. 2066, 3928.  The ALJ's conclusion that the record indicates drug-seeking behavior is supported by substantial evidence and this is a clear and convincing reason.

Fourth, the ALJ found Plaintiff's ability to engage in substantial gainful activity during the period of alleged disability suggests greater capacity than alleged. Tr. 2066-67.  The regulations provide that employment during any period of claimed disability may be probative of a claimant's ability to work.  20 C.F.R. § 416.971. The ALJ noted that Plaintiff obtained a job in a department store in August 2020 and had earnings constituting substantial gainful activity in the fourth quarter of 2020. Tr. 2067 (citing Tr. 3467).  Plaintiff testified that she stopped working because of her medical conditions and argues that should not be held against her.  ECF No. 13 at 19.  An unsuccessful work attempt which fails due to a claimant's limitations should not typically be a factor in considering a claimant's symptom complaints. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).  However, the ALJ noted that in November 2020, Dr. Davis-Boozer found Plaintiff "has no restrictions for working as a cashier" and released her to full-time work without restrictions.  Tr. 2067 (citing Tr. 3306).  This inconsistency reasonably suggests that Plaintiff may not be as limited as alleged.  Furthermore, even if the ALJ should not have considered Plaintiff's attempt to work, any error would be harmless because the ALJ cited other clear and convincing reasons supported by substantial evidence.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008);

1   *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was

2   harmless where the ALJ provided one or more invalid reasons for disbelieving a

3   claimant's testimony, but also provided valid reasons that were supported by the

4   record.").

5       Fifth, the ALJ found Plaintiff's daily activities are inconsistent with her

6   allegations of disability. Tr. 2065-67. It is reasonable for an ALJ to consider a

7   claimant's activities which undermine claims of totally disabling pain in evaluating

8   symptom claims. *See Rollins*, 261 F.3d at 857. The ALJ found Plaintiff's ability to

9   babysit, pick up her children from school and help them with homework, make

10  dinner, clean the house, do laundry, wash dishes, vacuum, and dust are inconsistent

11  with the limitations alleged. Tr. 2067 (citing Tr. 286-87). Even if these activities

12  are not particularly compelling in terms of activity level, they could reasonably be

13  construed as inconsistent with Plaintiff's allegations that she needed to lie down four

14  to five hours during the day or that she could not even get out of bed at times. Tr.

15  2065, 2067, 2085-87, 2095). Furthermore, other clear and convincing reasons

16  supported by substantial evidence were cited by the ALJ, so even if this reasoning is

17  less persuasive, there is no effect on the outcome.

18

19

20

21

ORDER - 21

**C.    Functioning Without Alcohol Use**

Plaintiff contends the ALJ erred in considering her functioning in the absence of alcohol use.  ECF No. 13 at 10.  The claimant bears the burden at steps one through four of the sequential analysis to show that substance abuse is not a "contributing factor material to [her] disability."  *Hardwick v. Astrue*, 782 F. Supp 2d 1170, 1177 (E.D.Wa. 2011) (citing *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)).  To meet this burden, the claimant "must provide competent evidence of a period of abstinence and medical source opinions relating to that period sufficient to establish [her] alcoholism is not a contributing factor material to [her] alleged mental impairments and disability." *Hardwick,* 782 F.Supp. 2d at 1177 (citing *Parra*, 481 F.3d at 748-49).  "Evidence that is inconclusive does not satisfy this burden." *Schwanz v. Astrue*, No. 10–CV–795, 2011 WL 4501943 at *11 (D.Or. Sept. 28, 2011) (citing *Parra,* 481 F.3d at 749–750).

Plaintiff asserts she had only three episodes of "binge drinking" and "quit alcohol" in October 2019.  ECF No. 13 at 10.  However, the ALJ found that Plaintiff had a significant period of alcohol abuse in 2018.  Tr. 2060.  She reported drinking a fifth of vodka per day in August 2018.  Tr. 1782, 2060.  She entered inpatient treatment in December 2018 and reported that she drank ten shots of alcohol per day.  Tr. 1661, 2060.  A February 2020 treatment note indicates that Plaintiff had "fairly heavy alcohol consumption" until onset of pancreatitis in October 2019, having reported that she drank one half gallon of vodka per day for the two years

prior.  Tr. 4116.  In September 2020, Plaintiff reported that she had two shots of

alcohol to celebrate her new job, Tr. 3381; however, at the hearing Plaintiff testified

that she had only "a quarter of a shot" of alcohol after her pancreatitis diagnosis in

October 2019.  Tr. 2088.   She had drug screens which were positive for alcohol in

February, May, and June 2021.  Tr. 2067 (citing Tr. 4126-27, 4182).

The ALJ found that Plaintiff's testimony may not accurately depict her

alcohol use, but that the record reflects significant improvement in her mental health

when she decreased her consumption considerably.  Tr. 2067.  She reported

symptoms of only moderate depression and mild anxiety in October 2019, and the

record reflects little to no evidence of mental health complaints in 2020 or 2021.  Tr.

2067.  In May 2020, she reported her depression and anxiety were under control and

she no longer needed mental health medication.  Tr. 3559, 2067.  She restarted

mental health medication in July 2020 because she was experiencing panic attacks

after a breakup with an abusive partner.  Tr. 3503.  The ALJ noted few, if any,

records thereafter indicating complaints of depression or anxiety.  Tr. 2067.  The

ALJ's finding that Plaintiff's mental health improved after she reduced her alcohol

consumption is supported by substantial evidence.

The ALJ acknowledged Plaintiff's diagnosis of pancreatitis in October 2019

supports at least some of her pain complaints.  Tr. 2066.  However, the ALJ 's

statement that "alcohol use is a primary instigator of pancreatitis" is not supported

by the record.  Tr. 2066.  Any error from the statement is harmless, however,

because the ALJ acknowledged ongoing complaints about pancreatitis symptoms after a cholecystectomy in May 2020, continued intermittent bouts of pancreatitis, and multiple hospital visits in 2020 and 2021 for Plaintiff's pain symptoms.  Tr. 2067.  In fact, the ALJ found that Plaintiff's exertional capacity would be reduced due to pain symptoms beginning in January 2020.  Tr. 2067.

Plaintiff asserts the ALJ "ignored the thousands of medical records, emergency room visits, and extended hospitalized stays showing complications from pancreatitis and UTIs in the absence of disordered alcohol use."  ECF No. 13 at 10. To the contrary, the ALJ discussed the treatment record in detail and at length, Tr. 2064-68, and Plaintiff's argument does not specifically address any of the findings made by the ALJ.  In particular, Plaintiff does not respond to the ALJ's recitation of the evidence regarding Plaintiff's alcohol use which is documented in the record.  As noted *supra*, it is the Plaintiff's obligation to provide "competent evidence of a period of abstinence" and medical source opinions relating to that period which establish that alcoholism is not a contributing factor material to alleged disability.  *Hardwick,* 782 F.Supp. 2d at 1177.  No medical source concluded that Plaintiff is disabled with or without alcohol, and Plaintiff's recitation of the record does not meet that obligation.  ECF No. 13 at 11-16.  Plaintiff does not cite any specific error and argues only generally that the ALJ failed to properly evaluate the impact of her conditions without alcohol.  ECF No. 13 at 16.  The ALJ's findings are

based on a reasonable interpretation of the record and are based on substantial evidence.

**D.    Step Five**

Plaintiff contends the ALJ erred at step five because the finding that there are jobs available that Plaintiff can perform was based on an incomplete hypothetical. ECF No. 13 at 21.   The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*  Plaintiff's argument assumes the ALJ erred in evaluating the RFC and other evidence.  As discussed throughout this decision, the ALJ's findings are supported by substantial evidence.  Thus, there is no error at step five.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** October 4, 2023.

LONNY R. SUKO
Senior United States District Judge

ORDER - 26